UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAMES QUERETTE and VINCENT ISERNIA, on behalf of themselves and all others similarly situated, | Case No. 7:22 Civ. 356 (PMH) |
| Plaintiffs, | |
| -against- | |
| CHROMALLOY GAS TURBINE LLC | |
| Defendant. | |

---

**MEMORANDUM OF LAW ON BEHALF OF DEFENDANT CHROMALLOY GAS TURBINE LLC IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION**

---

**PASHMAN STEIN WALDER HAYDEN, PC**
Samuel J. Samaro, Esq.
David N. Cinotti, Esq.
Court Plaza South
21 Main Street, Suite 200
Hackensack, New Jersey 07601
T: 201.488.8200
F: 201.488.5556
ssamaro@pashmanstein.com
dcinotti@pashmanstein.com

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ..................................................................................................ii

PRELIMINARY STATEMENT ............................................................................................ 1

BACKGROUND .................................................................................................................. 3

ARGUMENT ....................................................................................................................... 6

    I.    The standard of review and burden of proof................................................ 6

    II.   Questions relating to the scope of the CBA arbitration clause are for the arbitrator................................................................................................... 7

    III.  Plaintiffs' state statutory claims must exclusively be resolved under the CBA grievance procedures. ........................................................................ 10

        A.   In applying the clear-and-unmistakable standard, the Court should look to federal labor policy and general principles of contract interpretation. ............ 11

        B.   The plain language of the grievance provisions, consistent with federal labor policy and general principles of interpretation, requires arbitration of Plaintiffs' claims........................................................................ 12

    IV.  Chromalloy reserves the right to move to dismiss the claims on the merits if the Court finds that they are not arbitrable. ............................................ 18

CONCLUSION .................................................................................................................. 18

i

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*14 Penn Plaza LLC v. Pyett*,
   556 U.S. 247 (2009)..................................................................................10, 11

*Abdullayeva v. Attending Homecare Servs. LLC*,
   928 F.3d 218 (2d Cir. 2019)....................................................................11, 12, 13

*Aeronautical Indus. Dist. Lodge 91 v. United Techs. Corp.*,
   230 F.3d 569 (2d Cir. 2000)....................................................................12

*Ambrose v. City of White Plains*,
   No. 10-CV-4946, 2018 WL 1635498 (S.D.N.Y. Apr. 2, 2018) ...........................16

*AT & T Techs., Inc. v. Commc'n Workers of Am.*,
   475 U.S. 643 (1986).................................................................................8, 10

*Cir. City Stores, Inc. v. Adams*,
   532 U.S. 105 (2001).................................................................................6

*CNH Indus. N.V. v. Reese*,
   138 S. Ct. 761 (2018)...............................................................................15

*Contec Corp. v. Remote Sol., Co.*,
   398 F.3d 205 (2d Cir. 2005).....................................................................8

*Donohue v. Cuomo*,
   980 F.3d 53 (2d Cir. 2020)......................................................................12

*Drake Bakeries, Inc. v. Loc. 50, Am. Bakery & Confectionery Workers Int'l*,
   370 U.S. 254 (1962).................................................................................17

*Harrington v. Atl. Sounding Co.*,
   602 F.3d 113 (2d Cir. 2010).....................................................................7

*In re Am. Exp. Fin. Advisors Secs. Litig.*,
   672 F.3d 113 (2d Cir. 2011).....................................................................7

*Islam v. Lyft, Inc.*,
   524 F. Supp. 3d 338 (S.D.N.Y. 2021).......................................................6

*ITT World Commc'ns, Inc. v. Commc'ns Workers of Am.*,
   422 F.2d 77 (2d Cir. 1970).................................................................................................16

*Klein v. Experian Info. Sols., Inc.*,
   No. 19-CV-11156, 2020 WL 6365766 (S.D.N.Y. Oct. 29, 2020)...........................................7

*M & G Polymers USA, LLC v. Tackett*,
   574 U.S. 427 (2015)...........................................................................................................12

*Nortek Inc. v. ITT LLC*,
   No. 21-CV-03999, 2022 WL 656896 (S.D.N.Y. Mar. 4, 2022)...........................................8, 9

*Passero v. Ford*,
   No. 20-CV-05631, 2021 WL 1299507 (S.D.N.Y. Apr. 7, 2021)............................................8

*Republic Steel Corp. v. Maddox*,
   379 U.S.  (1965)................................................................................................................14

*Shaw Grp. Inc. v. Triplefine Int'l Corp.*,
   322 F.3d 115 (2d Cir. 2003)..................................................................................................8

*United Mine Workers of Am. v. Pennington*,
   381 U.S. 657 (1965)............................................................................................................11

*United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*,
   970 F.2d 1132 (2d Cir. 1992)..............................................................................................15

*United Steelworkers of Am. v. Rawson*,
   495 U.S. 362 (1990)............................................................................................................14

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*,
   363 U.S. 574 (1960)............................................................................................................10

*Wade Park Land Holdings, LLC v. Kalikow*,
   No. 21-CV-1657, 2022 WL 657664 (S.D.N.Y. Mar. 4, 2022).............................................16

*Wallace v. Grubhub Holdings, Inc.*,
   970 F.3d 798 (7th Cir. 2020) ................................................................................................6

*Whitman v. Am. Trucking Ass'n*,
   531 U.S. 457 (2001)............................................................................................................17

*Wright v. Univ. Mar. Serv. Corp.*,
  525 U.S. 70 (1998) ................................................................................................ 11

**Statutes**

9 U.S.C. § 2 ............................................................................................................... 6
9 U.S.C. § 3 ............................................................................................................... 7
9 U.S.C. § 4 ............................................................................................................... 7
29 U.S.C. § 173(d) ................................................................................................... 14
New York Labor Law § 191(1)(a) ............................................................................ 3

**Rules**

Fed. R. Civ. P. 12(h)(2) .......................................................................................... 18
Rule 12(b)(6) .......................................................................................................... 18

**Other Authorities**

11 Williston on Contracts § 32:10 (4th ed.) ........................................................... 16

Defendant Chromalloy Gas Turbine LLC ("Chromalloy") respectfully submits this memorandum of law in support of its motion to compel arbitration and stay this action under Sections 3 and 4 of the Federal Arbitration Act (the "FAA").  Plaintiffs' First Amended Complaint ("FAC") is attached to the Declaration of Samuel J. Samaro ("Samaro Decl.") as Exhibit A.

## PRELIMINARY STATEMENT

Plaintiffs in this putative class action seek a windfall of more than $20 million because their former employer, Chromalloy, paid their wages biweekly instead of weekly.  Plaintiffs do not contend that Chromalloy underpaid them; instead they claim that they are entitled to liquidated damages under provisions of the New York Labor Law for late payment of wages. What the Amended Complaint fails to inform the Court is that Plaintiffs *agreed to the biweekly payments* through their designated union—Local 475 IUE-CWA (the "Union")—in a Collective Bargaining Agreement for the period September 19, 2018, through September 18, 2021 (the "CBA").  Samaro Decl., Ex. B.

Ultimately, this Court should not decide whether Plaintiffs are entitled to that windfall because the CBA contains a comprehensive grievance procedure that culminates in arbitration before the American Arbitration Association ("AAA").  The plain language of the CBA makes clear that "any and all statutory claims" relating to Union members' employment must exclusively be resolved through that grievance process, with specified exceptions for discrimination, family-leave, and similar statutory claims.  It is undisputed that Plaintiffs' New York Labor Law claims do not fall within that exception.  Plaintiffs instead argue that the CBA

allows them to litigate any claims and bypass the grievance procedures as long as they hire their own lawyer to sue. That argument is meritless.

As an initial matter, Plaintiffs' argument concerns the scope of the arbitration clause in the CBA, which is itself subject to arbitration. Questions of scope are for the arbitrator when, as here, the parties incorporate in their arbitration clause rules that delegate to the arbitrator authority to resolve threshold issues like which claims and issues fall within the scope of the agreement to arbitrate. The CBA arbitration provision reaches all issues relating to grievances and incorporates the AAA labor-arbitration rules, which contain such a delegation provision. The Court should therefore not address Plaintiffs' argument that their claims are outside the scope of the grievance procedures.

If, however, the Court decides that it must resolve the scope of the arbitration clause, it should reject Plaintiffs' interpretation of the CBA grievance provisions as inconsistent with the plain language of the CBA, federal labor policy, and basic rules of contract interpretation. The CBA arbitration clause unambiguously includes all statutory claims as grievances subject to the dispute-resolution procedures, including arbitration. And the CBA makes clear that all grievances must exclusively be resolved through the grievance process, except for the statutory claims specified in Article 1 of the CBA, which—it is undisputed—do not include Plaintiffs' claims here.

Plaintiffs ignore the clear language and reticulated structure of the CBA, and rely entirely on a single sentence of the CBA concerning the right of employees to representation by private counsel in cases pursued in a forum other than one established under the Article 14 grievance process in the CBA. That provision does not itself recognize a right to sue on any

particular claims.  Instead, read together with the other clauses governing the grievance process, the clear meaning of that representation provision is that Union members can choose to raise Article 1 statutory claims in the appropriate court or agency through private counsel or follow the grievance process on such claims through Union representation.  The representation provision is not a general, back-door exemption from the grievance procedure for all claims. Adopting Plaintiffs' interpretation would reduce the CBA's mandatory grievance process—the traditional means of resolving labor disputes at unionized workplaces and the means favored by federal labor policy—to a wholly voluntary procedure driven by the preferences of individual employees, which is clearly not what the CBA says or intends.

## BACKGROUND

In this putative class action, Plaintiffs allege that Chromalloy violated New York Labor Law § 191(1)(a) by paying its manual-worker employees on a biweekly, rather than a weekly, basis.  *See* FAC ¶¶ 1-4, 64.  Plaintiffs do not claim that Chromalloy failed to pay any wages due or that the members of the proposed class suffered any actual damages; instead, Plaintiffs seek only liquidated damages for late payment of wages, interest, and attorneys' fees.  *Id.* ¶ 72. Plaintiffs allege that Chromalloy is liable for more than $4 million in liquidated damages per year.  *Id.* ¶ 17.  They seek to certify a class dating back six years.  *Id.* ¶ 5.

The CBA recognizes the Union as "the sole and exclusive collective bargaining representative of every employee covered by this Agreement with respect to rates of pay, wages, hours of employment and other conditions of employment, as defined in the Labor Management Relations Act."  CBA, Art. 3.A.  The CBA states that, "[e]ffective January 1, 2019, all employees shall be paid on a bi-weekly basis, every other Friday."  *Id.* Art. 11.F.  The

CBA also contains a comprehensive grievance process that culminates in labor arbitration. *See* CBA, Art. 14.

Article 14.A of the CBA defines "Grievance" to include "any and all claims arising out of, or relating in any way to, this Agreement, including without limitation, *any and all statutory claims* between or involving the Employer and the Union or any member thereof which relate in any way to a Union member's employment by the Employer." CBA, Art. 14.A (emphasis added). That section of the CBA also states that all Grievances "shall be subject to the procedures set forth in this Article 14, including without limitation the arbitration procedures." *Id.* If a Grievance is not resolved after the first four steps of the process, step five is arbitration before the AAA. *See* CBA, Art. 14.F. Section 14.F of the CBA states: "Any arbitration shall be governed by the Federal Arbitration Act . . . . Any and all Grievances and all issues arising from or relating thereto, including the interpretation and application of this section, shall be governed by, construed in accordance with and processed pursuant to AAA's then existing rules governing labor disputes, which rules are fully incorporated herein." *Id.* Only the Union or Chromalloy can commence an arbitration under the grievance procedures. *See id.* (stating that "the Union or the Employer, as the case may be, may institute arbitration by filing with the American Arbitration Association"); Art. 14.I ("The Employer and the Union are the only parties to this Agreement and they and only they have the right to representation and/or counsel with respect to any and all matters, direct or indirect, having to do with grievances on issues under this Agreement.").

In addition, Article 16.G, captioned "Exclusive Recourse to Agreement," states that the grievance process is the exclusive means of dispute resolution for disputes arising under the CBA, with limited and specified exceptions:

> Except for resort to agencies and/or courts charged with enforcement of the laws enumerated in Article 1 herein, and except further for resort to the National Labor Relations Board, it is the intention of the parties that employees will look exclusively to this Agreement for resolution of all disputes arising under this Agreement.

The "laws enumerated in Article 1" are federal and state nondiscrimination and family-leave statutes. *See* CBA, Arts. 1.A-C. They do not include the New York Labor Law provisions on frequency of pay that Plaintiffs allege Chromalloy violated here.

In their pre-motion letter to the Court, Plaintiffs did not dispute that they are bound by the CBA grievance procedures, but instead argued that Article 14.I of the CBA "preserves the rights of individuals to retain counsel and seek individual redress of their statutory rights outside of the arbitration process." Letter from Pls.' Counsel to Court at 3 (Mar. 17, 2022), ECF No. 15. Article 14.I of the CBA is titled, "RIGHT OF REPRESENTATION AND/OR COUNSEL FOR PARTIES ONLY." It explains that "[t]he Employer and the Union are the only parties to this Agreement and they and only they have the right to representation and/or counsel with respect to any and all matters, direct or indirect, having to do with grievances on issues under this Agreement." Article 14.I then states, "It is not the intention of the parties hereto to deprive any grievant of the right to be individually represented by private counsel as to any alleged right, only that any such alleged right must be pursued in a forum other than under this Article."

It is that last sentence that Plaintiffs claim permits them to file this action in federal court. As explained below, Plaintiffs are wrong. The clear language of the CBA, and the

5

unmistakable intent of that language, requires Plaintiffs' pay-frequency claim to be resolved through the contractual grievance process.

## ARGUMENT

The Court should compel arbitration of Plaintiffs' claims and stay this action. As required under the Court's individual practices, the standard of review and burden of proof are set forth in Point I. As explained in Point II, the arbitrability question that Plaintiffs raise is for the arbitrator, not the Court, because, by drafting a broad arbitration clause and incorporating the AAA rules into that clause, the parties clearly and unmistakably referred arbitrability issues to the arbitrator. As explained in Point III, if the Court decides to resolve the arbitrability issue itself, it should hold that Plaintiffs' state wage-and-hour claims are exclusively subject to arbitration under the CBA. Finally, out of an abundance of caution, Chromalloy notes in Point IV that it would seek leave to move to dismiss Plaintiffs' claims on the merits if the Court determines that those claims are not subject to the CBA's mandatory grievance process.

## I.     The standard of review and burden of proof.

The FAA broadly governs the enforceability of "[a] written provision in any maritime transaction or a contract evidencing a transaction involving commerce," 9 U.S.C. § 2, except for "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce," *id.* § 1. The Supreme Court has limited the Section 1 exception to "contracts of employment of transportation workers," *Cir. City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001), which lower courts have interpreted to mean employees for whom the "interstate movement of goods [or people] is a central part of [their] job description." *Islam v. Lyft, Inc.*, 524 F. Supp. 3d 338, 344 (S.D.N.Y. 2021) (quoting *Wallace v. Grubhub*

*Holdings, Inc.*, 970 F.3d 798, 801 (7th Cir. 2020)).  That exception does not apply here, and thus the FAA governs this motion.

Under Section 3 of the FAA, a district court, "upon being satisfied that the issue involved in [a] suit or proceeding is referable to arbitration . . . , shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement."  9 U.S.C. § 3.  Under Section 4 of the FAA, on the application of "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration," the court "shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."  9 U.S.C. § 4.

 "A party to an arbitration agreement seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid."  *Harrington v. Atl. Sounding Co.*, 602 F.3d 113, 124 (2d Cir. 2010).  Because there is no dispute that Plaintiffs and the putative class members are bound by the arbitration clause in the CBA, Plaintiffs bear the burden to show that the CBA grievance procedures are inapplicable to their claims.

## II.     Questions relating to the scope of the CBA arbitration clause are for the arbitrator.

As this Court has explained, courts in the Second Circuit apply a two-part test to decide if a dispute is subject to arbitration: (1) whether the parties entered into a valid agreement to arbitrate, and, if so, (2) whether the dispute at issue comes within the scope of that arbitration agreement.  *Klein v. Experian Info. Sols., Inc.*, No. 19-CV-11156, 2020 WL 6365766, at *3 (S.D.N.Y. Oct. 29, 2020) (Halpern, J.).  "However, before reaching the second element, courts must 'determine who—the court or the arbitrator—properly decides the issue.'"  *Id.* (quoting *In re Am. Exp. Fin. Advisors Secs. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011)).

Plaintiffs do not dispute that the CBA contains a valid arbitration agreement to which they are bound; instead, they maintain that their state statutory claims are outside the scope of mandatory arbitration under the CBA. *See* ECF No. 15, at 3. The threshold issue is whether the court or the arbitrator should address Plaintiffs' argument. Whether a dispute falls within the scope of an arbitration agreement is for the arbitrator, not the court, "when parties 'evince a clear and unmistakable agreement to arbitrate arbitrability.'" *Nortek Inc. v. ITT LLC*, No. 21-CV-03999, 2022 WL 656896, at *4 (S.D.N.Y. Mar. 4, 2022) (Halpern, J.) (quoting *Shaw Grp. Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 121 (2d Cir. 2003)). As this Court recently held, a broad arbitration clause that refers all claims or issues "arising under" the contract "reflects . . . a broad grant of power to the arbitrators as to evidence the parties' clear inten[t] to arbitrate issues of arbitrability." *Id.* at *4 (quoting *Shaw Grp. Inc.*, 322 F.3d at 121) (internal quotation marks omitted). In addition, "the Second Circuit has squarely held that 'when . . . parties explicitly incorporate rules'—such as the rules of the AAA—'that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator.'" *Id.* at *5 (quoting *Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205, 208 (2d Cir. 2005)); *see also Passero v. Ford*, No. 20-CV-05631, 2021 WL 1299507, at *4 (S.D.N.Y. Apr. 7, 2021) (Halpern, J.) ("The parties' arbitration clause explicitly refers to the rules of the American Arbitration Association . . . , which in turn gives the arbitrator the power to rule on any objections with respect to the arbitrability of any claim or counterclaim."). Those principles equally apply in labor-arbitration cases. *See AT & T Techs., Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 649 (1986) (holding that arbitrators decide "the question of arbitrability—whether a collective-bargaining agreement creates a duty

for the parties to arbitrate the particular grievance," if "the parties clearly and unmistakably provide" that the arbitrators have that authority).

In *Nortek*, this Court held that whether a tort claim was within the scope of the arbitration agreement was for the arbitrator to decide because the arbitration clause broadly referred all claims and issues arising under the parties' contract to arbitration and incorporated AAA rules.  2022 WL 656896, at *4.  The Court should employ the same reasoning here. Article 14.F of the CBA states: "Any and all Grievances and all issues arising from or relating thereto, including the interpretation and application of this section, shall be governed by, construed in accordance with and processed pursuant to AAA's then existing rules governing labor disputes, which rules are fully incorporated herein."  That clause makes arbitrable "all issues arising from or relating to [any and all Grievances], including the interpretation and application of this section [i.e., the arbitration clause]."  Such broad language clearly and unmistakably gives the arbitrator authority to interpret the arbitration clause and decide whether it makes arbitration the exclusive means to resolve Plaintiffs' claims.  Moreover, the CBA's arbitration clause incorporates the AAA labor-arbitration rules, which state that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement."  AAA Labor Arb. R. 3(a), effective July 1, 2013, https://www.adr.org/sites/default/files/Labor_Arbitration_Rules_3.pdf. The parties to the CBA therefore clearly and unmistakably referred arbitrability issues— including the scope question that Plaintiffs raise—to arbitration.

The fact that the Union, rather than the Union members individually, agreed to the broad arbitration clause incorporating the AAA rules does not make any difference in the analysis.  As

discussed below, Plaintiffs are likely to argue that the Union's waiver of its members' right to sue on state statutory claims must be clear and unmistakable. *See infra* at 11. Regardless of whether the clear-and-unmistakable standard applies to Plaintiffs' *substantive* claims, it certainly applies—and is satisfied—on the question whether the Union waived Plaintiffs' right to litigate *arbitrability*. Because the Union clearly and unmistakably waived for itself and its members the right to litigate the scope of the CBA arbitration clause, the Court should not resolve Plaintiffs' arbitrability challenge here.

Accordingly, it is for an arbitrator to decide whether the wage-and-hour claims that Plaintiffs seek to assert are subject to mandatory arbitration under the CBA.

## III.   Plaintiffs' state statutory claims must exclusively be resolved under the CBA grievance procedures.

If the Court addresses the scope of the arbitration clause, it should reject Plaintiffs' arguments that their claims are not subject to the mandatory and exclusive grievance procedures in the CBA.

Unions may waive the right of their members to pursue statutory claims in court. *See 14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 256 (2009) (holding that unions can agree on behalf of their members to make federal discrimination claims subject to arbitration under a CBA). Ordinarily, "there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *AT & T Techs., Inc.,* 475 U.S. at 650 (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960)). The Second Circuit has held, however, that a union's waiver of its members right to sue on statutory claims in favor of arbitration "must be

10

clear and unmistakable." *Abdullayeva v. Attending Homecare Servs. LLC*, 928 F.3d 218, 222 (2d Cir. 2019) (internal quotation marks omitted).

In their pre-motion letter, Plaintiffs relied on that Second Circuit case law and argued that the CBA must clearly and unmistakably waive Union members' right to sue on statutory claims. The clear-and-unmistakable waiver standard is derived from a line of labor cases concerning waivers of *federal* statutory rights and should not govern Plaintiffs' state-law claims, particularly state statutory claims relating to when wages must be paid instead of discrimination or other important individual rights.[1] But even if that standard does apply, it is clear and unmistakable from the CBA, read consistent with federal labor policy and basic principles of contract interpretation, that Plaintiffs' statutory claims must be arbitrated.

### A. In applying the clear-and-unmistakable standard, the Court should look to federal labor policy and general principles of contract interpretation.

To clearly and unmistakably waive the right to sue, a CBA arbitration clause need only make arbitration the means to resolve "statutory causes of action generally," rather than specifying each and every statutory claim subject to arbitration. *Abdullayeva*, 928 F.3d at 224.

---

[1] *See Wright v. Univ. Mar. Serv. Corp.*, 525 U.S. 70 (1998). In *Wright*, the Supreme Court noted that there is ordinarily a presumption of arbitrability of disputes arising from the interpretation of collective-bargaining agreements but that the presumption does not apply to the arbitration of rights derived from federal statutes, in that case the Americans with Disabilities Act. The Court explained that "the right to a federal judicial forum is of sufficient importance to be protected against less-than-explicit union waiver in a CBA." *Id.* at 396. That reasoning does not apply here, where Plaintiffs assert only state-law claims, which do not themselves give rise to the right to a federal judicial forum. In addition, the dispute between the parties turns largely on construction of the CBA and other matters very familiar to a labor arbitrator, such as the reasonableness of a change from weekly to biweekly pay periods. Indeed, "wages lie at the very heart of those subjects about which employers and unions must bargain." *United Mine Workers of Am. v. Pennington*, 381 U.S. 657, 664 (1965). As such, the concern that informed the Court's decision to reverse the normal presumption of arbitrability in *Wright* does not apply to state statutory claims such as the one in this case.

When applying the standard, courts follow general principles of contract interpretation, including reading CBA dispute-resolution provisions "in the context of the entire agreement" and in a manner "that gives a reasonable and effective meaning to all terms of a contract." *Id.* (internal quotation marks and emphasis omitted); *see also Donohue v. Cuomo*, 980 F.3d 53, 64 (2d Cir. 2020) ("Under both federal law and New York law, '[w]e interpret collective-bargaining agreements . . . according to ordinary principles of contract law.'" (quoting *M & G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 435 (2015))).  In addition, application of those general principles must be "consistent with federal labor policies." *Aeronautical Indus. Dist. Lodge 91 v. United Techs. Corp.,* 230 F.3d 569, 576 (2d Cir. 2000).

### B. The plain language of the grievance provisions, consistent with federal labor policy and general principles of interpretation, requires arbitration of Plaintiffs' claims.

The CBA defines "Grievance" to include "*any and all statutory claims* between or involving the Employer and the Union or any member thereof which relate in any way to a Union member's employment by the Employer."  CBA, Art. 14.A (emphasis added).  Under Article 14.A, all Grievances "shall be subject to the procedures set forth in this Article 14, including without limitation the arbitration procedures." *Id.*  Under Article 14.F, all Grievances must be arbitrated.  And under Article 16.G, captioned "Exclusive Recourse to Agreement," Union members must "look exclusively to this Agreement for resolution of all disputes arising under this Agreement," except for "resort to agencies and/or courts charged with enforcement of the laws enumerated in Article 1 herein." *Id.* Art. 16.G.

Those provisions clearly render the grievance process the exclusive means to resolve disputes as to statutory claims with limited exceptions for those claims enumerated in Article 1

of the CBA.  Plaintiffs argue, however, that there is language in the contract that permits an employee to avoid the grievance process by hiring a private lawyer and filing the claim in court. The language reads as follows:

> It is not the intention of the parties hereto to deprive the grievance of the right to be individually represented by private counsel as to any alleged right, only that any such alleged right must be pursued in a forum other than under this Article.

CBA Art. 14.I.  Plaintiffs read that provision as a carve-out from the mandatory grievance procedure for claims brought on behalf of employees by private counsel.  But Plaintiffs' interpretation conflicts with the plain language of the clause, federal labor policy, and general contract principles.

On its face, Article 14.I does not convey a right to sue or recognize any individual rights at all, but merely says that if Union members want to assert an "*alleged* right" through their own counsel, they cannot do so in the grievance process and would have do so in a different "forum."  Article 16.G—not Article 14.I—tells Union members when they have a right to sue Chromalloy on a statutory claim: on those statutory claims listed in Article 1, and only on those claims.  Thus, read "in the context of the entire agreement" and in a manner "that gives a reasonable and effective meaning to all terms of" the CBA, *Abdullayeva*, 928 F.3d at 224, Article 14.I informs Union members that they cannot retain their own lawyer to bring a CBA grievance based on a statutory claim listed in Article I, but, pursuant to Article 16.G, they can sue on Article 1 claims through private counsel in a different forum—a court or agency of competent jurisdiction.

If Plaintiffs' contrary interpretation were correct, there would be no mandatory grievance procedure in the CBA because that procedure could be skirted by every employee,

regardless of the nature of the dispute, simply by hiring private counsel and filing a complaint in court. That is a nonsensical result and violates long-standing federal labor policy on the importance of mandatory grievance procedures in collective-bargaining agreements. Federal labor policy has long supported grievance procedures as the exclusive method for settling labor disputes. *See* 29 U.S.C. § 173(d) ("Final adjustment by a method agreed upon by the parties is declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement."). As noted by the Supreme Court in *Republic Steel Corp. v. Maddox*, 379 U.S. 658 (1965), a functional grievance procedure must be "exclusive," meaning that employees are not free to seek redress of a dispute covered by a grievance procedure in a private lawsuit:

> A contrary rule which would permit an individual employee to completely sidestep available grievance procedures in favor of a lawsuit has little to commend it. In addition to cutting across the interests already mentioned, it would deprive employer and union of the ability to establish a uniform and exclusive method for orderly settlement of employee grievances. If a grievance procedure cannot be made exclusive, it loses much of its desirability as a method of settlement. A rule creating such a situation would inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements.

*Id.* at 652. The interpretation of the CBA advanced by Plaintiffs, which would allow every grievance to be brought as a lawsuit by private counsel, thus subverts the federal labor policy that guides the Court's application of the CBA. *See Aeronautical Indus. Dist. Lodge 91*, 230 F.3d at 576 (holding that CBAs must be interpreted "consistent with federal labor policies").

Plaintiffs' construction also violates general principles of contract interpretation applied by federal courts. *See United Steelworkers of Am. v. Rawson*, 495 U.S. 362, 368 (1990) ("[T]he federal law fashioned by the courts under § 301 [of the Labor Management Relations Act]

governs the interpretation and application of collective-bargaining agreements.").  Under those

principles, courts "must avoid an interpretation of an agreement that renders one of its

provisions superfluous."  *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen

& Helpers of Am.*, 970 F.2d 1132, 1136 (2d Cir. 1992).  Plaintiffs' interpretation renders

nugatory significant and clearly expressed provisions of the CBA:

- Article 14.A's definition of "Grievance," which includes "any and all statutory claims between or involving the Employer and the Union or any member thereof which relate in any way to a Union member's employment by the Employer";

- language in the same Article 14.A, which provides that "all such Grievances . . . "shall be subject to the procedures set forth in this Article 14, including without limitation the arbitration procedures set forth in Section F below"; and

- Article 16.G's clear statement that "[e]xcept for resort to agencies and/or courts charged with enforcement of the laws enumerated in Article 1 herein, and except further for resort to the National Labor Relations Board, it is the intention of the parties that employees will look exclusively to this Agreement for resolution of all disputes arising under this Agreement," and thus that all Grievances must exclusively be arbitrated except for the claims enumerated in Article 1 of the CBA.

It is impossible to give effect to Plaintiffs' interpretation of the agreement and not render

the above provisions meaningless.  On the other hand, it is a simple matter to harmonize the

provisions.  What the language referenced by Plaintiffs means is that Union members can

choose to raise Article 1 statutory claims in the appropriate court or agency through private

counsel or follow the grievance procedure on such claims through Union representation.  To

suggest that the provisions are in such conflict that they cannot be reconciled is to suggest that

there is a fatal ambiguity in the agreement, meaning that the agreement is susceptible to two

*reasonable* interpretations.  *See CNH Indus. N.V. v. Reese*, 138 S. Ct. 761, 765 (2018) (holding

under general contract principles that a contract is ambiguous if, "after applying established

rules of interpretation, it remains reasonably susceptible to at least two reasonable but

conflicting meanings" (internal quotation marks omitted)).  For all of the reasons described previously, Plaintiffs simply do not proffer a reasonable interpretation.

Chromalloy's interpretation is supported by a number of other rules of contract interpretation.  For instance, if there is a conflict in a contract between specific terms of the agreement and the more general, the specific overrides the general.  *See Wade Park Land Holdings, LLC v. Kalikow*, No. 21-CV-1657, 2022 WL 657664, at *20 (S.D.N.Y. Mar. 4, 2022) ("'When general and specific clauses conflict, the specific clause governs the meaning of the contract.'" (quoting 11 Williston on Contracts § 32:10 (4th ed.))).  There can be little dispute that the provisions relied on by Chromalloy for proposition that Union employees may not avoid the requirements of the grievance process by hiring private counsel are much more specific, definitive, and particularized than the language cited by Plaintiffs for the contrary proposition.

In addition, the rule of *exclusio alterius* "dictates that when contract language expressly describes a particular act, thing or person to which it shall apply, an irrefutable inference must be drawn that what is omitted or not included was intended to be omitted or excluded." *Ambrose v. City of White Plains*, No. 10-CV-4946, 2018 WL 1635498, at *13 (S.D.N.Y. Apr. 2, 2018) (Seibel, J.) (internal quotation marks omitted), *aff'd sub nom. Barr v. City of White Plains*, 779 F. App'x 765 (2d Cir. 2019); *see also ITT World Commc'ns, Inc. v. Commc'ns Workers of Am.*, 422 F.2d 77, 81-82 (2d Cir. 1970) ("[T]he parties elsewhere in the contract showed that they knew how to clearly exclude a subject from arbitration when they so desired. Had the parties wanted to do the same with claims of violation of the 'no-strike' clause, they could easily have been equally specific." (footnote omitted)).  Article 16.G expressly exempts

from the mandatory grievance process the statutory claims listed in Article 1, creating an "irrefutable inference" that other claims such as Plaintiffs' are not also exempt.

Finally, there is the notion that, as with statutes, courts apply the common-sense principle that parties do not "hide elephants in mouseholes," *Whitman v. Am. Trucking Ass'n*, 531 U.S. 457, 468 (2001), when interpreting CBAs.  *See Drake Bakeries, Inc. v. Loc. 50, Am. Bakery & Confectionery Workers Int'l*, 370 U.S. 254, 259-60 (1962) (holding that company's claim for strike damages fell under the "comprehensive language" of the arbitration clause because a matter "so fundamental and so basic to the company under the contract" would have been expressly exempted from arbitration if that were the intent).  If it were the intention of the parties to incorporate such a fundamental exception to the general rule that contractual procedures are exclusive with regard to disputes defined as Grievances, they would not have done so in one sentence concerning representation following the detailed exposition describing precisely the opposite intention.

All of those principles lead clearly and unmistakably to one conclusion: Union members must follow the grievance process to assert statutory claims except for the specific statutory claims enumerated in Article 1 of the CBA.  As to those exempted claims only, Union members can either grieve them through the Union or retain their own lawyers to file actions or administrative complaints (but, as Article 14.I makes clear, they cannot use their own lawyers to represent them if they choose to present a CBA grievance).  Plaintiffs' contrary interpretation would render the CBA's grievance process a toothless tiger and wholly dependent on the whim of Union members.

Thus, if the Court reaches the issue, it should hold that Plaintiffs' New York Labor Law claims must be raised under the CBA grievance process.

**IV.     Chromalloy reserves the right to move to dismiss the claims on the merits if the Court finds that they are not arbitrable.**

Although failure to state a claim can be raised up to and at trial, Fed. R. Civ. P. 12(h)(2), out of an abundance of caution, Chromalloy respectfully reserves the right to move to dismiss Plaintiffs' claims under Rule 12(b)(6) if the Court decides that the claims are not subject to the CBA's grievance procedures.

## CONCLUSION

For the foregoing reasons, the Court should grant Chromalloy's motion to compel arbitration and stay this action pending completion of the grievance procedures, should the Union choose to invoke them.

Dated:  May 5, 2022
        Hackensack, New Jersey

PASHMAN STEIN WALDER HAYDEN, P.C.

By: _/s/ Samuel J. Samaro_
    Samuel J. Samaro
    David N. Cinotti
    Court Plaza South
    21 Main Street, Suite 200
    Hackensack, New Jersey 07601
    T: 201.488.8200
    F: 201.488.5556
    ssamaro@pashmanstein.com
    dcinotti@pashmanstein.com