UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JAMES QUERETTE and VINCENT ISERNIA,

                Plaintiffs,

-against-

CHROMALLOY GAS TURBINE LLC,

                Defendant.

**MEMORANDUM**
**OPINION AND ORDER**

22-CV-00356 (PMH)

PHILIP M. HALPERN, United States District Judge:

    James Querette ("Querette") and Vincent Isernia ("Isernia" and together, "Plaintiffs") commenced this putative class action against Chromalloy Gas Turbine LLC ("Defendant") on January 14, 2022. (Doc. 1).[1] Plaintiffs assert a single claim for relief: untimely payment of wages in violation of New York Labor Law § 191(1)(a).

    Before the Court is Defendant's motion to compel Plaintiffs to arbitrate their claims and stay this action pursuant to 9 U.S.C. §§ 3-4. (*See* Doc. 19; Doc. 20, "Def. Br."; Doc. 21, "Samaro Decl."; Doc. 22, "Pls. Br."; Doc. 23, "Reply"). For the reasons set forth below, Defendant's motion is GRANTED.

## BACKGROUND

    Plaintiffs, former employees of Defendant, allege that Defendant violated New York Labor Law § 191(1)(a), which requires that employers pay certain employees on a weekly basis. *See* N.Y. Lab. Law § 191(1)(a). As relevant to the instant dispute, Defendant entered into a collective bargaining agreement ("CBA"), effective from September 19, 2018 through September 18, 2021, with Local 475 IUE-CWA (the "Union"). (Doc. 21-2, "CBA"). Plaintiffs do not dispute that they

---

[1] Plaintiffs filed the First Amended Complaint ("FAC"), pursuant to Fed. R. Civ. P. 15(a)(2), on March 2, 2022. (Doc. 8).

were both members of the Union during the relevant period and therefore subject to the terms of the CBA. Article 14 of the CBA creates a five-step process governing grievances related to Union members' employment, which culminates in arbitration. (CBA § 14.A). This section broadly defines "grievance" to include "any and all claims arising out of, or relating in any way to, this Agreement, including without limitation, any and all statutory claims between or involving the Employer and the Union or any member thereof which relate in any way to a Union member's employment by the Employer." (*Id.*).

Article 14 also states that all Grievances "shall be subject to the procedures set forth in this Article 14, including without limitation the arbitration procedures." (*Id.*). If a Grievance is not resolved after the first four steps of the process, step five is arbitration before the American Arbitration Association ("AAA"). (*Id.*, § 14.F). Section 14.F of the CBA states: "Any arbitration shall be governed by the Federal Arbitration Act . . . . Any and all Grievances and all issues arising from or relating thereto, including the interpretation and application of this section, shall be governed by, construed in accordance with and processed pursuant to AAA's then existing rules governing labor disputes, which rules are fully incorporated herein." (*Id.*). Only the Union or Defendant can commence an arbitration under the grievance procedures. (*Id.* § 14.I ("The Employer and the Union are the only parties to this Agreement and they and only they have the right to representation and/or counsel with respect to any and all matters, direct or indirect, having to do with grievances on issues under this Agreement.")).

Section G of Article 14, captioned "Exclusive Recourse to Agreement," states that the grievance process is the exclusive means of dispute resolution for disputes arising under the CBA:

> Except for resort to the agencies and/or courts charged with the enforcement of the laws enumerated in Article 1 herein, and except further for resort to the National Labor Relations Board, it is the intention of the parties that employees will look exclusively to this

>Agreement for the resolution of all disputes arising under this Agreement.
>
>This Agreement represents a settlement of all issues after extensive collective bargaining between the parties, including but not limited to, the "Vacation Hours" grievance with respect to Article 8, Section A, with prejudice. Neither party shall be obligated to bargain upon any subject, whether or not the same was mentioned and/or discussed during the course of said collective bargaining, prior to the period contemplated by Section 8(d) of the National Labor Relations Act at the end of this Agreement. Unless otherwise expressly incorporated herein, all prior agreements, memoranda of understanding are declared null and void and of no future effect.

(*Id.* § 14.G). Article 1 of the CBA identifies a number of federal and state non-discrimination and family leave laws, and Defendant "subscribes to and adopts as its policy," the relevant provisions of those laws.[2] Section I of Article 14, captioned "Right of Representation and/or Counsel for Parties Only," preserves the right of Union members "to be individually represented by private counsel as to any alleged right, only that any such alleged right must be pursued in a forum other than under this Article." (*Id.* § 14.I (the "Private Counsel Carveout")).

## STANDARD OF REVIEW

"In deciding motions to compel [arbitration], courts apply a 'standard similar to that applicable to a motion for summary judgment.'" *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (quoting *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003)). Thus, when ruling on a motion to compel arbitration, a court should "consider all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and

---

[2] Specifically, Article 1 of the CBA adopts as Defendant's policy the relevant provisions of the Federal Equal Pay Act of 1963, Title VII of the Federal Civil Rights Act of 1964, the Civil Rights Act of 1991, the Age Discrimination in Employment Act of 1967, the Americans with Disabilities Act of 1990, the National Labor Relations Act of 1935, the Genetic Information Nondiscrimination Act of 2008, the New York State Human Rights Law, the Family Medical Leave Act of 1993, the New York Paid Family Leave Law, and the New York State Constitution. (CBA § 1).

admissions on file, together with affidavits." *Id.* If there is no "genuine issue of material fact" as to the arbitrability of the dispute, the Court may decide the motion without a trial. *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 113 (2d Cir. 2012).

"When moving to compel arbitration, '[t]he party seeking . . . arbitration bears an initial burden of demonstrating that an agreement to arbitrate was made.'" *Barrows v. Brinker Rest. Corp.*, 36 F.4th 45, 50 (2d Cir. 2022) (quoting *Hines v. Overstock.com, Inc.*, 380 F. App'x 22, 24 (2d Cir. 2010) (summary order)). This burden "does not require the moving party to show initially that the agreement would be enforceable, merely that one existed." *Id.* "Once the existence of an agreement to arbitrate is established, the burden shifts to the party seeking to avoid arbitration to 'show[ ] the agreement to be inapplicable or invalid.'" *Zachman v. Hudson Valley Fed. Credit Union*, 49 F.4th 95, 102 (2d Cir. 2022) (quoting *Harrington v. Atl. Sounding Co.*, 602 F.3d 113, 124 (2d Cir. 2010)).

Under the Federal Arbitration Act ("FAA"), a written agreement to arbitrate is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The FAA embodies a national policy favoring arbitration founded upon a desire to preserve the parties' ability to agree to arbitrate, rather than litigate, their disputes." *Doctor's Assocs., Inc. v. Alemayehu*, 934 F.3d 245, 250 (2d Cir. 2019). Arbitration is 'a matter of contract between the parties; it is a way to resolve those disputes – but only those disputes – that the parties have agreed to submit to arbitration.'" *DDK Hotels, LLC v. Williams-Sonoma, Inc.*, 6 F.4th 308, 316 (2d Cir. 2021) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995). "Because a collective bargaining agreement is not an ordinary contract, doubts about the scope of an arbitration clause in a CBA should be resolved in favor of coverage." *Loc. Union 97, Int'l Bhd. of Elec. Workers, AFL-CIO v. NRG Energy, Inc.*, 53 F.4th 42, 48 (2d Cir. 2022) (cleaned

up); *see also Vera v. Saks & Co.*, 335 F.3d 109, 117 (2d Cir. 2003) ("When a CBA contains an arbitration clause, there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."); *Stop & Shop Supermarket Co., LLC v. United Food & Com. Workers' Union Loc. 342, AFL-CIO, CLC*, 407 F. Supp. 2d 515, 518 (S.D.N.Y. 2005) ("[I]f a CBA contains an arbitration clause, there is a presumption favoring arbitrability").

Where, as here, there are "threshold questions of arbitrability, such as whether the arbitration agreement applies to a particular dispute," the Second Circuit has instructed that these issues "presumptively should be resolved by the court and not referred to the arbitrator." *DDK Hotels*, 6 F.4th at 317 (citing *Doctor's Assocs.*, 934 F.3d at 250-51). "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." *Id.* (quoting *First Options*, 514 U.S. at 943). "The concept of arbitrability 'include[s] questions such as whether the parties are bound by a given arbitration clause, or whether an arbitration clause in a concededly binding contract applies to a particular type of controversy.'" *Beijing Shougang Mining Inv. Co. v. Mongolia*, 11 F.4th 144, 153 (2d Cir. 2021) (quoting *BG Grp. PLC v. Republic of Argentina*, 572 U.S. 25, 34 (2014)); *see also AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 651 (1986) (holding that it was for the court to decide whether a labor dispute fell within the arbitration clause of a collective bargaining agreement). "[I]n the absence of an arbitration agreement that clearly and unmistakably elects to have the resolution of the arbitrability of the dispute decided by the arbitrator, the question whether the particular dispute is subject to an arbitration agreement 'is typically an issue for judicial

determination.'" *Metro. Life Ins. Co. v. Bucsek*, 919 F.3d 184, 191 (2d Cir. 2019) (quoting *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010)).

## ANALYSIS

The parties' dispute concerns two issues. First, whether the CBA clearly and unmistakably delegated the issue of arbitrability to the arbitrator. Second, if the CBA did not delegate the issue of arbitrability to the arbitrator, whether the Private Counsel Carveout exempts Plaintiffs' claim from arbitration. The Court addresses each of these issues in turn.

### I. Delegation of Arbitrability

Turning first to the question of delegation of arbitrability, "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (cleaned up). To show "clear and unmistakable evidence of the parties' intent to delegate arbitrability to an arbitrator," parties may point to the arbitration agreement "explicitly incorporat[ing] procedural rules that empower an arbitrator to decide issues of arbitrability." *DDK Hotels*, 6 F.4th at 318 (quotations omitted). "Because the AAA Commercial Arbitration Rules . . . explicitly empower an arbitrator to resolve questions of arbitrability," the Second Circuit "ha[s] found incorporation of these rules into an arbitration agreement to be relevant in evaluating whether there is clear and unmistakable evidence of the parties' intent to delegate the question of arbitrability to the arbitrator." *Id.* However, the Second Circuit has cautioned that incorporating procedural rules does not *per se* show the intent to delegate. Instead, "context matters." *Id.* So when "the arbitration agreement is broad and expresses the intent to arbitrate all aspects of all disputes, this—coupled with incorporation of rules that expressly empower an arbitrator to decide issues of arbitrability— constitutes clear and unmistakable evidence of the parties' intent to delegate the question of

arbitrability to the arbitrator." *Id.* at 318-19. By contrast, when "the arbitration agreement is narrower, vague, or contains exclusionary language suggesting that the parties consented to arbitrate only a limited subset of disputes, incorporation of rules that empower an arbitrator to decide issues of arbitrability, standing alone, does not suffice to establish the requisite clear and unmistakable inference of intent to arbitrate arbitrability." *Id.* at 319. In other words, when "there is a qualifying provision (whether described as a carve-out or carve-in) that arguably excludes the present dispute from the scope of the arbitration agreement, that provision creates ambiguity regarding the parties' intent to delegate arbitrability to the arbitrator." *DDK Hotels*, 6 F.4th at 322. This ambiguity then "delays application of AAA rules until a decision is made as to whether a question does or does not fall within the intended scope of arbitration, in short, until arbitrability is decided." *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1032 (2d Cir. 2014).

Here, the Private Counsel Carveout renders the CBA arguably ambiguous as to the parties' intent to arbitrate arbitrability since the carve-out broadly permits "any grievant" the right to be "individually represented by private counsel as to any alleged right," in "a forum other than" arbitration.³ (CBA § 16.I). This broad language suggests that the parties consented to arbitrate a limited subset of disputes and that arguably this dispute could be brought in a forum other than arbitration. Therefore the Court finds that the CBA does not reflect a clear and unmistakable intent to delegate the issue of arbitrability to an arbitrator. *LAVVAN, Inc. v. Amyris, Inc.*, No. 21-1819, 2022 WL 4241192 (2d Cir. Sept. 15, 2022) (holding an agreement did not clearly and unmistakably

---

³ The parties to the CBA clearly included a carve-out to arbitrability which "arguably" could "exclude[] the present dispute from the scope of the arbitration agreement." *DDK Hotels*, 6 F.4th at 322. That fact standing alone under *DDK Hotels* requires the Court to determine arbitrability, irrespective of the interpretation given to the Private Counsel Carveout. *Id.* at 323 (holding that a district court, rather than the arbitrator, should decide if a claim is arbitrable where the contract at issue contains a carve-out that "arguably" excludes the dispute from the scope of the arbitration agreement).

delegate the issue of arbitrability to an arbitrator where the agreement "commits some types of disputes to litigation"). Defendant has not met its burden in overcoming the presumption that arbitrability "should be resolved by the court and not referred to an arbitrator." *Doctor's Assocs., Inc.*, 934 F.3d at 250-51. Accordingly, the Court, rather than the arbitrator, must decide whether Plaintiffs' claim is arbitrable.

II.     Arbitrability

Next, the Court turns to whether the Private Counsel Carveout exempts Plaintiffs' claim from the CBA's arbitration requirement. When interpreting an arbitration agreement, courts apply "ordinary state-law principles that govern the formation of contracts." *First Options*, 514 U.S. at 944. Two principles are particularly relevant here. First, "an interpretation of a contract that has 'the effect of rendering at least one clause superfluous or meaningless . . . is not preferred and will be avoided if possible.'" *Galli v. Metz*, 973 F.2d 145, 149 (2d Cir. 1992) (quoting *Garza v. Marine Transport Lines, Inc.*, 861 F.2d 23, 27 (2d Cir. 1988)). Second, "[i]t is a well-recognized tenet of contract interpretation that 'specific terms and exact terms are given greater weight than general language.'" *Int'l Bhd. of Elec. Workers, Loc. Union 43 v. NLRB*, 9 F.4th 63 (2d Cir. 2021) (quoting *Aramony v. United Way of Am.*, 254 F.3d 403, 413 (2d Cir. 2001)). In addition, given that the instant dispute concerns the interpretation of a collective bargaining agreement between a labor union and an employer, the application of those general contract principles must be "consistent with federal labor policies." *Aeronautical Indus. Dist. Lodge 91 v. United Techs. Corp.*, 230 F.3d 569, 576 (2d Cir. 2000).

Plaintiffs' interpretation—that the Private Counsel Carveout "created an explicit means for employees to seek redress in court for statutory violations—would allow Union members to entirely avoid the CBA's grievance process so long as they retain private counsel. (Pls. Br. at 8).

Such an interpretation would render Article 16.G—which states that "employees will look exclusively to this Agreement for resolution of all disputes arising under this Agreement" with the exception of "enforcement of the laws enumerated in Article 1"—meaningless. (CBA § 16.G). None of Defendant, the Union, or the Union members would be able to look exclusively to the CBA's grievance process if they are free to sidestep that process at any time by retaining private counsel and commencing a lawsuit. Also, the Union's exclusive right to represent all members with Union counsel at the arbitration would be thwarted. (CBA § 14.I ("[n]o grievant will be represented by anyone who is not an official representative of and/or counsel for the Union")). Plaintiffs' proposed interpretation is also inconsistent with the CBA's definition of "grievance" which includes all "statutory claims between or involving the Employer and the Union or any member thereof which relate in any way to a Union member's employment by the Employer." (CBA § 14.A).

Interpreting the Private Counsel Carveout to mean that Union members can choose to bring those statutory claims specifically identified in Article 1—under federal and state non-discrimination and family-leave laws—in a forum other than arbitration with counsel of their own choosing, gives meaning to all provisions of the CBA. Such an interpretation is in accord with federal labor policy, which supports negotiated grievance procedures as the "desirable method" to resolve disputes arising over a collective bargaining agreement. *See* 29 U.S.C. § 173(d). A narrower reading of the Private Counsel Carveout is also consistent with the Second Circuit's guidance that "doubts about the scope of an arbitration clause in a CBA should be resolved in favor of coverage." *Loc. Union 97, Int'l Bhd. of Elec. Workers, AFL-CIO v. NRG Energy, Inc.*, 53 F.4th 42, 48 (2d Cir. 2022) (cleaned up). It would be inappropriate to interpret a carefully negotiated instrument such as the CBA to allow Union members, such as Plaintiffs, to sidestep the grievance

process entirely for claims related to the payment of wages simply by retaining private counsel as permitted for a limited and specified number of claims set forth in the CBA. (CBA § 16.G).

Accordingly, the Court holds that the Private Counsel Carveout does not apply to Plaintiffs' claim and therefore the instant dispute is subject to the arbitration agreement contained in Article 14 of the CBA.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's motion to compel arbitration. This action is STAYED pending arbitration.

The Clerk of the Court is respectfully directed to: (i) terminate the motion sequence pending at Doc. 19; and (ii) administratively close this case, without prejudice to either party moving to reopen the case within 30 days of the conclusion of the arbitration proceedings.[4]

**SO ORDERED.**

Dated:   White Plains, New York
         January 10, 2023

_____
PHILIP M. HALPERN
United States District Judge

---

[4] *See Zimmerman v. UBS AG*, No. 17-CV-04503, 2018 WL 4054860, at *6 (S.D.N.Y. Aug. 24, 2018), *appeal dismissed*, 789 F. App'x 914, 915-16 (2d Cir. 2020) ("The district court's administrative closure of the case does not constitute a final decision: there is no jurisdictional significance to [a] docket entry marking [a] case as 'closed,' which we will assume was made for administrative or statistical convenience.").